UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-60443-BLOOM/Valle

ESTA KRAVETS,
*individually and on behalf of
all others similarly situated*,

      Plaintiff,

v.

ANTHROPOLOGIE, INC.,

      Defendant.

_____/

**ORDER ON MOTION TO COMPEL**
**INDIVIDUAL ARBITRATION AND STAY LITIGATION**

**THIS CAUSE** is before the Court upon Defendant Anthropologie, Inc.'s ("Defendant") Motion to Compel Individual Arbitration and Stay Litigation, ECF No. [18] ("Motion"). Plaintiff Esta Kravets ("Plaintiff") has filed a Response in Opposition, ECF No. [25] ("Response"), to which Defendant filed a Reply, ECF No. [26] ("Reply"). The Court has carefully reviewed the Motion, all related submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

**I. BACKGROUND**

Plaintiff initiated this class action against Defendant on February 1, 2022, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. *See* ECF No. [1-1] at 4. Plaintiff asserts that Defendant violated 47 U.S.C. § 227(c)(2) ("Count I") and 47 U.S.C. § 227(B) ("Count II"). *See id.* On February 28, 2022, Defendant removed the case to this Court. *See* ECF No. [1].

In the instant Motion, Defendant requests that the Court compel the parties to arbitration

and stay the case. ECF No. [18]. Defendant argues that Plaintiff agreed to the Anthropologie Messaging Terms & Conditions ("Text Terms") for the text messaging program ("Text Program"), which includes an arbitration provision directing the parties to resolve all disputes related to the Text Terms through arbitration ("Arbitration Provision"). The Arbitration Provision states in relevant part:

> **Dispute Resolution**
>
> 1.     General. In the interest of resolving disputes between you and Anthropologie in the most expedient and cost effective manner, you and Anthropologie agree that any dispute arising out of or in any way related to these messaging terms and conditions ("Messaging Terms") or your receipt of text messages from Anthropologie or its service providers will be resolved by binding arbitration. Arbitration is less formal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, may allow for more limited discovery than in court, and can be subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. This agreement to arbitrate disputes includes all claims arising out of or in any way related to these Messaging Terms, or your receipt of text messages from Anthropologie or its service providers whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of when a claim arises. YOU UNDERSTAND AND AGREE THAT, BY AGREEING TO THESE MESSAGING TERMS, YOU AND Anthropologie ARE EACH WAIVING THE RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE IN A CLASS ACTION AND THAT THESE MESSAGING TERMS SHALL BE SUBJECT TO AND GOVERNED BY THE FEDERAL ARBITRATION ACT.

ECF No. [18-1] at 11 (emphasis in original).[1] In support of the Motion, Defendant submitted the Declaration of Emily Kaplan, ECF No. [18-1] ("Kaplan Declaration").

Plaintiff responds that she did not have actual or constructive notice of the Arbitration Provision because (1) Defendant did not provide Plaintiff with reasonably conspicuous notice of the Text Terms; (2) Plaintiff did not unambiguously manifest assent to Defendant's terms; and (3)

---

[1] Defendant's website provides Terms of Use, which contain a substantially similar arbitration provision and a class action waiver provision. *See* ECF No. [18] at 6, 7 n.3, [18-1] at 15, 19. The capitalized term "Arbitration Provision" in this Order is a reference to the Arbitration Provision in the Text Terms, not the arbitration provision in the Terms of Use. The Text Terms also include a provision that incorporates by reference the Terms of Use and the arbitration provision therein. *See* ECF No. [18-1] at 10.

Plaintiff did not ratify any agreement through her participation in the Text Program. *See* ECF No. [25]. In the alternative, Plaintiff argues that the Court should defer ruling on the Motion and grant leave to conduct limited arbitration-specific discovery. *See id.* at 13-15.

## II. LEGAL STANDARD

The presence of a valid arbitration provision raises a strong presumption in favor of enforcement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 630-31 (1985) (stressing that the enforcement of a mutually agreed upon arbitration or forum-selection clause serves as an "indispensable precondition to the achievement of the orderliness and predictability essential to any international business transaction"). Indeed, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "embodies a 'liberal federal policy favoring arbitration agreements.'" *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, the FAA requires courts to "rigorously enforce agreements to arbitrate." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1357-58 (11th Cir. 2002) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 625-26), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 134 S. Ct. 773 (2014); *see also Hemispherx Biopharma, Inc.*, 553 F.3d at 1366 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Despite courts' proclivity for enforcement, a party will not be required to arbitrate where it has not agreed to do so. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011) (citing *United Steelworkers of Am.*

3

*v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). "Under federal law, arbitration is a matter of consent, not coercion." *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008). It is axiomatic that the determination of whether parties have agreed to submit a dispute to arbitration is an issue of law subject to judicial resolution. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Generally, this determination requires the district court to apply standard principles of state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995); *see also P&S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003).

Under Florida law, when presented with a motion to compel arbitration, a court must consider three factors: (1) whether a valid agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived. *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir. 2011); *see also Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envt'l. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003); and *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)) ("Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived.").

In addition, the Court of Appeals for the Eleventh Circuit has explained that courts should "treat motions to compel arbitration similarly to motions for summary judgment." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021) (citing *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (concluding "that a summary judgment-like standard is appropriate and hold[ing] that a district court may conclude as a matter

of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement")). Once the movant satisfies its initial burden of showing there is no genuine issue of material fact, then "the burden shifts to the nonmovant to show evidence raising a genuine issue of material fact." *Deal v. Tugalo Gas Co.*, 2021 WL 1049813, at *7 (11th Cir. 2021). "A plaintiff challenging the enforcement of an arbitration agreement bears the burden to establish, by substantial evidence, any defense to the enforcement of the agreement." *Inetianbor v. CashCall, Inc.*, 923 F. Supp. 2d 1358, 1362 (S.D. Fla. 2013) (citing *Bess v. Check Express,* 294 F.3d 1298, 1306-07 (11th Cir. 2002)). In determining whether to compel arbitration, district courts must view the facts in the light most favorable to the nonmovant. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 213. Thus, if the criteria above are satisfied, a court is required to issue an order compelling arbitration. *See John B. Goodman Ltd. P'ship v. THF Constr., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, . . . a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute.").

### III. DISCUSSION

As noted above, Defendant requests that the Court compel Plaintiff to submit her claims to arbitration and stay the case. *See* ECF No. [18]. The parties do not dispute that an arbitrable issue exists and that the right to arbitrate was not waived. As such, the only material issue before the Court is whether there was a valid agreement to arbitrate. *See Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010) *aff'd*, 433 F. App'x 842 (11th Cir.

2011).

### A. Notice of Text Terms

Defendant argues that Defendant clearly and conspicuously set forth the Arbitration Provision in the Text Terms. *See* ECF No. [18] at 8-9. Plaintiff responds that she did not have notice of the Arbitration Provision because the Text Terms would not put a reasonably prudent person on notice of the Arbitration Provision. *See* ECF No. [25] at 7-9. Plaintiff contends that the Arbitration Provision was part of a "browsewrap" agreement as opposed to a "clickwrap" agreement. *See id.* at 6-7. According to Plaintiff, a browsewrap agreement requires parties to have actual knowledge of the terms and conditions or have hyperlinks to the terms and conditions that are conspicuous enough to put a reasonably prudent person on constructive notice. *See id.* at 7 (citing *Goldstein v. Fandango Media, LLC*, No. 9:21-CV-80466-RAR, 2021 WL 6617447, at *3 (S.D. Fla. July 27, 2021)). Plaintiff submits that the comparatively minuscule size of the Text Terms failed to provide adequate constructive notice and that Defendant failed to clearly denote that the hyperlinks in the Text Terms were clickable links. *See id.* at 8-9 (citing *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022)). Defendant replies that the agreement was a clickwrap agreement. *See* ECF No. [26] at 7-8. Defendant further argues that even if the agreement in question could be considered to be a browsewrap agreement, Plaintiff is bound by the browsewrap agreement and the Arbitration Provision therein. *See id.* at 9-11.

The Court agrees with Plaintiff to the extent that the Arbitration Provision was part of a browsewrap agreement. As an initial matter, the Court notes that the Text Terms incorporate by reference the Terms of Use. *See* ECF No. [18-1] at 4. The arbitration provision in the Terms of Use – not to be confused with the Arbitration Provision in the Text Terms – provides that "where applicable, the law of the Commonwealth of Pennsylvania" shall apply. *See* ECF No. [18-1] at 20

("This [a]rbitration [a]greement shall be governed by, and interpreted, construed, and enforced in accordance with the Federal Arbitration Act and, where applicable, the law of the Commonwealth of Pennsylvania."). However, because there is a threshold issue of whether Plaintiff assented to the Text Terms, which incorporate the Terms of Use and the choice of law clause therein, the law of contract formation in Florida applies to first determine the existence of a contract. *See First Options*, 514 U.S. at 943 ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.").[2]

> As this Court has previously explained and the Eleventh Circuit has affirmed,
>
> Florida courts have recognized two main types of internet contracts: (1) clickwrap agreements: 'when a website directs a purchaser to the terms and conditions of the sale and requires the purchaser to click a box to acknowledge that they have read those terms and conditions[;]' and (2) browsewrap agreements: 'when a website merely provides a link to the terms and conditions and does not require the purchaser to click an acknowledgement during the checkout process. The purchaser can complete the transaction without visiting the page containing the terms and conditions.'

*Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 n.3 (S.D. Fla. 2021), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022) (quoting *Bell v. Royal Seas Cruises, Inc.*, No. 19-cv-60752, 2020 WL 5742189, at *5 (S.D. Fla. May 13, 2020) (quoting *Vitacost.com, Inc. v. McCants*, 210 So. 3d 761, 762 (Fla. 4th DCA 2017))).[3]

---

[2] Defendant concedes that the law on contract formation in Florida and Pennsylvania do not materially differ. *See* ECF No. [18] at 14 n.8.

[3] The Court recognizes that courts in this District have offered differing definitions of clickwrap and browsewrap agreements. *See Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1230 n.4 (S.D. Fla. 2020) ("[A] 'browsewrap' is an agreement where the user accepts a website's terms of use merely by browsing the site. A 'clickwrap' is an agreement where the user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." (citations omitted)). However, as noted above, the Court finds most persuasive the definition that this Court set forth and the Eleventh Circuit affirmed less than a month prior to this Order. *See Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1190 n.3 (S.D. Fla. 2021), *aff'd*, No. 21-11567, 2022 WL 1499693 (11th Cir. May 12, 2022).

In this case, it is evident that the website, reproduced in relevant part below, did not require Plaintiff to "click a box to acknowledge that [she] read [the] terms and conditions." *Arencibia*, 533 F. Supp. 3d at 1190 n.3. Whether the website required Plaintiff to click on the "GET FREE SHIPPING NOW" button is immaterial given that there was no "box" for Plaintiff to acknowledge that she read the Text Terms. Rather, the website "merely provide[d] a link to the terms and conditions and [did] not require the purchaser to click an acknowledgement during the checkout process." *Id.* Plaintiff could "complete the transaction without visiting the page containing the terms and conditions." *Id.* As such, the website contained an offer for a browsewrap agreement.



*See* ECF No. [18-1] at 3.

However, the Court agrees with Defendant to the extent that Plaintiff is nonetheless bound by the browsewrap agreement. "Browsewrap agreements are only enforced when (1) the user has actual knowledge of the terms and conditions, or (2) the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *Goldstein*, 2021 WL 6617447, at *2. Assuming that Plaintiff had no actual notice of the Text Terms, the Court is not persuaded that the Text Terms were not conspicuous enough to put a reasonably prudent person on inquiry notice. The Text Terms are located directly above the "GET FREE SHIPPING NOW" button and contain bold and underlined links to additional terms and conditions. Such a placement is sufficient to provide inquiry notice. *See Bell v. Royal Seas Cruises, Inc.*, No. 19-CV-60752, 2020 WL 5742189, at *7 (S.D. Fla. May 13, 2020), *report and recommendation adopted*, No. 19-CIV-60752-RAR, 2020 WL 5639947 (S.D. Fla. Sept. 21, 2020) ("Rather, the statement regarding the Terms and Conditions is located directly above the Continue button that the user must click to proceed with using the Website. Thus, it is highly likely that the user would see the statement regarding the Terms and Conditions.").

Further, Plaintiff's reliance on *Goldstein*, 2021 WL 6617447, at *3 and *Berman*, 30 F.4th at 857, is unavailing. Plaintiff relies on both cases for the proposition that small font size and inconspicuous typeface do not provide inquiry notice. *See* ECF No. [25] at 8. In *Goldstein*, the court based its finding that there was insufficient notice in part because the terms and conditions below were placed below the button to complete the purchase in question. *See* 2021 WL 6617447, at *3. The court further found that the size and the typeface made the terms and conditions "practically unreadable." *Id.* In contrast, as noted above, the Text Terms in this case are listed above the "GET FREE SHIPPING NOW" button. Further, the font size and typeface, while relatively smaller and less prominent than the "GET FREE SHIPPING NOW" button, do not

render the Text Terms "practically unreadable." In *Berman*, the court found that the terms and conditions were "in a font so small that [they were] barely legible to the naked eye." 30 F.4th at 856-57. Again, that is not the case here.

Plaintiff further relies on *Berman* for the proposition that hyperlinks to the terms and conditions must be presented in a manner that makes clear that they are clickable. *See* ECF No. [25] at 9. In *Berman*, the Ninth Circuit held that

> A web designer must do more than simply underscore the hyperlinked text in order to ensure that it is sufficiently set apart from the surrounding text. Customary design elements denoting the existence of a hyperlink include the use of a contrasting font color (typically blue) and the use of all capital letters, both of which can alert a user that the particular text differs from other plain text in that it provides a clickable pathway to another webpage. Consumers cannot be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks.

30 F.4th at 857 (citations and internal quotation marks omitted). In this case, while Defendant did not use blue letters or capital letters to indicate that the hyperlinks were clickable, the hyperlinks are bolded and underlined to be "sufficiently set apart from the surrounding text." It is evident that Plaintiff was not required to "hover [her] mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks." *Berman*, 30 F.4th at 857. As such, the hyperlinks were presented in a manner that gave Plaintiff adequate notice that they were clickable links.

In sum, Plaintiff's arguments on this matter are unpersuasive. The Text Terms were clearly and conspicuously set forth as to give Plaintiff inquiry notice of the Arbitration Provision.

### B. Unambiguous Manifest Assent to Text Terms

Defendant argues that Plaintiff assented to the Arbitration Provision. *See* ECF No. [18] at 14-16. Plaintiff responds that she did not unambiguously assent to the Arbitration Provision. *See* ECF No. [25] at 9-11. According to Plaintiff, her act of clicking on the button did not signify her

assent to the Arbitration Provision because the Arbitration Provision was not fully described and she was not aware of the legal significance of clicking on the button. *See id.* (citing *Berman*, 30 F.4th at 857 and *Goldstein*, 2021 WL 6617447, at *3). Defendant replies that the button stated "GET FREE SHIPPING NOW *when you sign up for email and texts*[,]" ECF No. [26] at 10 (emphasis added), and therefore made clear that by clicking on the button, Plaintiff would be agreeing to get free shipping and assenting to the Text Terms by enrolling in the Text Program. Defendant further maintains that the Text Terms were presented before the button in question. *See id.*

The Court agrees with Defendant. As Defendant correctly points out, the button itself contains the statement that Plaintiff can get free shipping if and when Plaintiff chooses to "sign up for email and texts," indicating that by clicking on the button, Plaintiff would be agreeing to get free shipping and to receive emails and texts. ECF No. [18-1] at 3. Further, statements immediately above the button clearly explain the legal significance of clicking the button by stating that "[b]y signing up via text, you agree to receive recurring automated promotional and personalized marketing text messages (e.g., cart reminders) from Anthropologie at the cell number used when signing up." *Id*. Statements immediately above the button further invite Plaintiff to view additional terms and policies. *See id.* As such, the legal significance of clicking on the button was adequately explained on the button and in the statements immediately preceding the button.

Furthermore, Plaintiff does not dispute that Plaintiff affirmatively sent Defendant a pre-populated text message stating her intention "to subscribe to recurring automated personalized marketing alerts (e.g., cart reminders) from Anthropologie" to complete her enrollment in the Text Program and assent to the Text Terms. ECF Nos. [18] at 8, [26] at 5. There can be no question, considering the "double-opt in" process that required Plaintiff's affirmative response in the form

11

of a text, that Plaintiff understood the legal significance of her actions and agreed to the Text Terms and the Arbitration Provision within the Text Terms.

To the extent that Plaintiff relies on *Berman*, 30 F.4th at 857 and *Goldstein*, 2021 WL 6617447, at *3, the Court is again not persuaded. In *Berman*, there was no indication "what action would constitute assent to [the] terms and conditions. Likewise, the text of the button itself gave no indication that it would bind plaintiffs to a set of terms and conditions." 30 F.4th at 858. In the instant case, however, the button itself indicates that by clicking on it, Plaintiff would get free shipping and Plaintiff would be signed up for emails and texts from Defendant. As noted above, the Text Program is described immediately above the button in further detail, and Defendant provided plainly clickable hyperlinks for additional terms and conditions. ECF No. [18-1] at 3. Furthermore, the Court reiterates that after clicking on the button to sign up for free shipping and the Text Program, Plaintiff affirmatively sent Defendant a pre-populated text message stating her intention to complete her enrollment in the Text Program. ECF Nos. [18] at 8, [26] at 5. This undisputed "double-opt in" process establishes that Plaintiff knew or should have known of the legal significance of her actions and was manifestly assenting the Text Terms and the accompanying Arbitration Provision. As such, this case presents different factual circumstances than *Berman* where it was unclear what actions would constitute assent to the terms and conditions.

Next, in *Goldstein*, the court held that the defendant's purported notice did not sufficiently describe the arbitration provision as to make the plaintiff aware that completing a purchase would bind the plaintiff to the arbitration provision. *See* 2021 WL 6617447, at *4. The court also noted that the terms and conditions outlining the arbitration provision had an inconspicuous appearance and were located below the button to complete the purchase in question. *See id.* In contrast, as noted above, the Text Terms were provided before the "GET FREE SHIPPING NOW" button.

Unlike the complete purchase button in *Goldstein*, here the button itself referenced the Text Program by expressly stating that Plaintiff would get free shipping "when [Plaintiff] sign[ed] up for email and texts" and conveyed the legal significance of clicking on the button. Thus, while the Arbitration Provision itself was not described in the button, the Court finds that the language in the button referencing the Text Program, statements immediately above the button describing the Text Program, the hyperlink to the Arbitration Provision immediately above the button, and Plaintiff's affirmative text to opt-in to the Text Program, are sufficient to give Plaintiff notice of the legal significance of her actions and establish that Plaintiff manifestly assented to the Text Terms and the Arbitration Provision.

In sum, the undisputed facts establish that Plaintiff manifestly assented to the Arbitration Provision. Given the Court's determination, the Court need not consider whether Plaintiff also ratified the Arbitration Provision through her participation in the Text Program and her failure to timely opt out.

### C. Arbitration-Specific Discovery

In the alternative, Plaintiff requests that the Court defer ruling on the Motion and grant Plaintiff leave to conduct limited arbitration-specific discovery so that the Court can issue a ruling on the Motion based on a more developed factual record. *See* ECF No. [25] at 13-14 (citing *Chamberlain v. Integraclick, Inc.*, No. 10-00477, 2011 WL 13238359 (N.D. Fla. Mar. 21, 2011); *In re Checking Account Overdraft Litigation*, No. 09-02036, 2012 U.S. Dist. LEXIS 138625 (S.D. Fla. Sept. 19, 2012)). Defendant replies that there is no gap in the record that would warrant arbitration-specific discovery, and that Plaintiff has not presented any evidence that creates a material factual dispute. *See* ECF No. [26] at 13-14.

The Court agrees with Defendant. As Defendant correctly notes, courts have granted

limited arbitration-specific discovery only where the party opposing a motion to compel arbitration has presented evidence that creates a material factual dispute. *See* ECF No. [26] at 13 (citing *Stewart v. Laidlaw & Co. (UK) Ltd.*, No. 11-22846, 2012 WL 280388, at *2 (S.D. Fla. Jan. 31, 2012); *Lawhon v. Aaron's, Inc.*, No. 19-02333, 2020 WL 2219665, at *13 (M.D. Fla. May 7, 2020)). Here, the material facts are not in dispute, particularly with respect to the notice Defendant provided and Plaintiff's actions in clicking on the "GET FREE SHIPPING NOW" button and sending an affirmative text opting into the Text Program.

Further, Plaintiff's reliance on *Chamberlain*, 2011 WL 13238359, and *In re Checking Account*, 2012 U.S. Dist. LEXIS 138625, is unavailing. In *Chamberlain*, the court permitted limited discovery because the plaintiffs showed that the procedure through which the plaintiffs allegedly assented to the terms and conditions was "unclear." 2011 WL 13238359 at *2. The court further noted the plaintiffs showed that "the determinative facts are likely to be complicated, not simple." *Id.* The procedure in this case is clear, simple, and undisputed. Plaintiff clicked on the button and sent an affirmative opt-in text. As for *In re Checking Account*, the court determined that limited discovery would be "useful in ensuring a complete record." 2012 U.S. Dist. LEXIS 138625. In this case, the record is complete with regard to the Arbitration Provision and no further discovery is necessary. Plaintiff's request for leave to conduct limited arbitration-specific discovery is denied.

**D. Stay**

As a final matter, Defendant requests that the Court stay Plaintiff's claims pending arbitration, which Plaintiff fails to address in her Response. *See* ECF Nos. [18] at 1, [25]. "Pursuant to Section 3 of the FAA, a district court shall stay a pending suit 'upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration' under a valid arbitration

agreement." *Klay v. All Defendants*, 389 F.3d 1191, 1203-04 (11th Cir. 2004) (quoting 9 U.S.C. § 3). "For arbitrable issues, the language of Section 3 indicates that the stay is mandatory." *Id.* at 1204 (citing *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) ("[A] court *must* stay its proceedings if it is satisfied that an issue before it is arbitrable . . . ." (emphasis added))). As discussed above, the Court determines that Plaintiff's claims in this case are subject to arbitration. Therefore, a stay is appropriate.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [18]**, is **GRANTED**.
2. The parties shall proceed to arbitration pursuant to the Arbitration Provision.
3. Plaintiff's claims against Defendant are **STAYED** pending arbitration. The parties may file a motion to lift the stay, if necessary, once the arbitration proceedings have concluded.
4. The Clerk of Court shall **ADMINISTRATIVELY CLOSE** the case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 3, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record